IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

B.A.G.                                                                                                          PLAINTIFF

V.                                            4:09CV00256 JTR

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration,                                                                          DEFENDANT

## MEMORANDUM AND ORDER

Plaintiff, B.A.G.,[1] appeals the final decision of the Commissioner of the Social Security Administration denying his claim for Supplemental Security Income ("SSI"). Both parties have submitted Appeal Briefs (docket entries #6 and #9), and the issues are now joined and ready for disposition.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion,[2] "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). Reversal is not warranted, however,

---

[1] Plaintiff is a minor. (Tr. 265). In accordance with Fed. R. Civ. P. 5.2(a), only his initials should be used in Court filings.
   The underlying application was filed on Plaintiff's behalf by his mother. (Tr. 268). The usual and better practice is for the appeal to be brought by the parent as plaintiff on behalf of his or her child. However, the Court is satisfied that it is not necessary to appoint a guardian ad litem under the circumstances of this case. *See* Fed.R.Civ.P. 17(c).

[2] *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

"merely because substantial evidence would have supported an opposite decision." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).

After conducting an administrative hearing, the Administrative Law Judge ("ALJ") concluded that Plaintiff had not been under a disability,[3] within the meaning of the Social Security Act, at any time through December 26, 2007, the date of the ALJ's decision. (Tr. 29). On February 5, 2009, the Appeals Council received and considered additional evidence and then denied Plaintiff's request for a review of the ALJ's decision, thereby making it the final decision of the Commissioner. (Tr. 7-10). On April 16, 2009, Plaintiff filed his Complaint initiating this appeal. (Docket entry #1).

At the time of the underlying administrative hearing, Plaintiff was nine years old, and a fourth-grade student.[4] (Tr. 231, 572, 579). In determining whether an SSI claimant under the age of 18 is under a disability, a three-step sequential evaluation process is used. 20 C.F.R. § 416.924(a) (1998) (2007).

The first step is a determination of whether the child is engaged in substantial gainful activity. *Id.*, § 416.924(b). If so, benefits are denied; if not, the evaluation continues to the next step.

The second step involves a determination of whether the impairment or combination of impairments is severe, *i.e.*, more than a slight abnormality that causes no more than minimal functional limitations. *Id.*, § 416.924(c). If not, benefits are denied; if so, the evaluation continues.

The third step involves a determination of whether the child has impairment(s) that meet, medically equal, or functionally equal, a Listed impairment. *Id.*, § 416.924(d). If so, and if the duration requirement is met, benefits are awarded; if not, benefits are denied.

---

[3] An individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c (a)(3)(C)(i) (1996).

[4] Plaintiff's mother acknowledges filing "numerous" prior applications on behalf of her son. (Pltf's Brf. at 1).

The ALJ found that Plaintiff: (1) had never engaged in substantial gainful activity (Tr. 20); (2) had a "severe" impairment, asthma (*id.*); but (3) did not have any impairment or combination of impairments that met or medically equaled a Listing or that functionally equaled a Listed impairment. *Id.* Thus, he found that Plaintiff was not disabled. (Tr. 28, 29).

Because Plaintiff had a "severe" impairment that did not meet or medically equal a Listing, it was necessary for the ALJ to determine if the impairment functionally equaled a Listing. *See* 20 C.F.R. § 416.926a(a) (2007).

The Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (the Welfare Reform Act), P.L. 104-193, 110 Stat. 2105 (codified in various sections of 42 U.S.C.), required implementing regulations. Under those final regulations, an impairment is functionally equivalent to a Listing when the impairment results in "marked" limitations in two domains of functioning, or an "extreme" limitation in one domain of functioning. 20 C.F.R. § 416.926a(a) (2007).

A "marked" limitation in a domain seriously interferes with a child's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(2) (2007). It also means a limitation that is "more than moderate" but "less than extreme." *Id.* It is the equivalent of functioning expected on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. *Id.*

An "extreme" limitation in a domain very seriously interferes with a child's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(3) (2007). "Extreme" limitation also means a limitation that is "more than marked." *Id.* It is the rating given to the worst limitations. *Id.* It is the equivalent of functioning expected on standardized testing with scores that are at least three standard deviations below the mean. *Id.*

The domains of functioning are:

1) Acquiring and using information;

2) Attending and completing tasks;

3) Interacting and relating with others;

  4) Moving about and manipulating objects;

  5) Caring for yourself; and

  6) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i-vi) (2007).[5]

  In his Appeal Brief (docket entry #6), Plaintiff argues that the ALJ erred in failing to: (1) adequately consider Plaintiff's mental and learning impairments; (2) properly consider Plaintiff's continuing need for prednisone to treat his asthma; (3) adequately consider the effect of Plaintiff's obesity on his ability to function; and (4) find that Plaintiff met Listing 103.03. The Court will separately discuss each of these alleged errors.

  First, Plaintiff contends the ALJ did not adequately consider his mental and learning impairments. (Pltf's App. Brf. at 8). He relies exclusively on an undated questionnaire completed by his second grade teacher, which he argues makes it clear that: (1) he suffered at least a "marked" impairment in the domain of acquiring and using information; and (2) "possibly" an impairment in the domain of attending and completing tasks.[6]  (Tr. 251-58).

  In addressing the domain of acquiring and using information,[7] the ALJ made the following finding:

> **Acquiring and using information.** Based upon the evidence of record and the testimony at the hearing, the Administrative Law Judge finds that the claimant has less than marked limitations in the first domain of acquiring and using information. On administration of the Wechsler Intelligence Scale for Children-III (WISC-II) [*sic*] in March 2006, the claimant obtained a valid verbal IQ score of 98, performance IQ score of 98 and full scale IQ score of 97 indicating that he was functioning in the average range of intellectual functioning with underachievement in math and reading (Exhibit C-5F). Testing on the Reynolds Intellectual Assessment Scales (RIAS), in October 2006, also revealed that he was functioning in the average range of intellectual functioning. The claimant testified that he is currently in the 4th grade.

---

 [5]These domains are described in greater detail, with examples, in the regulations. *See* 20 C.F.R. § 416.926a(g)-(l) (2007).

 [6]As noted earlier, Plaintiff would have to have "marked" limitation of function in two domains to be deemed disabled.

 [7]*See* 20 C.F.R. § 416.926a (2007).

> He has received tutoring in the past, but the record does not show that he has ever had to repeat a grade. The claimant was noted to have normal conversational skills during evaluation in February 2006 at the James L. Dennis Developmental Center (Exhibit C-4F, p. 2), and was reported to communicate effectively and there was no evidence of his receptive or expressive language being compromised during March 2006 evaluation (Exhibit C-5F, p. 4).

(Tr. 26). After reviewing the entire record, the Court concludes that substantial evidence supports the ALJ's determination that Plaintiff had "less than marked" limitation of function in the domain of acquiring and using information.

In addressing the domain of attending and completing tasks,[8] the ALJ made the following finding:

> **Attending and completing tasks.** I find that the claimant has less than marked limitations in this domain. The claimant was diagnosed with attention deficit hyperactivity disorder and placed on medication (Concerta) in 2005. However, during evaluation in February 2006 at the James L. Dennis Developmental Center, he was noted to have normal activity level and attention for his age, despite not being on his ADHD medication. His teacher reported that the claimant was having problems focusing and following classroom and school rules, but again this was because he was not taking ADHD medications at that time according to his mother. The claimant was than placed on Adderall (Exhibit C-4F, p. 2), and during psychological evaluation in March 2006, the examiner noted that the claimant was able to concentrate very well, had a very nice attention span, persisted well in tasks, and had a good even pace to his work (Exhibit C-5F, p. 5). In addition, during more recent evaluation in October 2006, the examiner reported that the claimant's attention deficit hyperactivity disorder, combined type, was getting better with positive effects on Adderall XR (Exhibit C-4E, p. 2).

(Tr. 26). The Court concludes that substantial evidence in the record as a whole supports the ALJ's determination that Plaintiff suffered "less than marked" limitation of function in the domain of attending and completing tasks.

Second, Plaintiff argues that the ALJ erred in failing to mention in his decision Plaintiff's continuing need for prednisone treatment for his asthma. (Pltf's App. Brf. at 9). The ALJ thoroughly discussed Plaintiff's treatment and medications.[9] (Tr. 21-26). While the ALJ has a duty

---

[8] *See* 20 C.F.R. § 416.926a (2007).

[9] He also mentioned that a treating physician indicated Plaintiff was not compliant concerning his medications. (Tr. 24).

to fully and fairly develop the record, the ALJ does not have to discuss every piece of evidence presented. *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010); *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000); *Weber v. Apfel*, 164 F.3d 431, 432 (8th Cir. 1999); *Miller v. Shalala*, 8 F.3d 611, 613 (8th Cir. 1993). Furthermore, an ALJ's failure to cite specific evidence does not mean that it was not considered. *Wildman* at 966; *Craig* at 436; *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998). Thus, the Court concludes that this argument lacks merit.

Third, Plaintiff contends that the ALJ did not adequately consider the effects of his obesity on his ability to function.[10] (Pltf's App. Brf. 9-10). In making this argument, Plaintiff fails to mention that obesity was *not* listed as one of his disabling conditions. (Tr. 269). Furthermore, during the administrative hearing, Plaintiff's attorney indicated that the primary focus of Plaintiff's claim for disability was his asthma. (Tr. 578). Finally, there was only very brief testimony at the hearing concerning Plaintiff's obesity:

> A  I mean because he [is] overweight. I know that and that's why I'm trying to get –
>
> Q  Well, they, they've encouraged him to lose weight and exercise –
>
> A  Yeah.
>
> Q  -- but with his asthma, he's probably limited on what he can [do] there.
>
> A  A little. Yes, sir.
>
> Q  Do you all ever go to the mall or some place where he can walk –
>
> A  Walk around?
>
> Q  -- indoors?
>
> A  Yes, sir. We walk around. He ride[s] his bike. I try to do everything that I can.

(Tr. 591-92). Plaintiff testified that during recess he ran around and played basketball. (Tr. 579). He had not had an asthma attack at his current school. (Tr. 581).

---

[10] A medical record dated one month after the administrative hearing reflects that Plaintiff is four and a half feet tall and weighs 124 pounds. (Tr. 535).

In this case, the ALJ *unquestionably* did discuss and properly consider Plaintiff's borderline obesity in evaluating his ability to function. (Tr. 21, 22, 24, 26, 27). Social Security Ruling 02-01p does not mandate any special procedures for evaluating obesity. Thus, the Court concludes that Plaintiff's argument is without merit.

Finally, Plaintiff contends that the ALJ erred by not finding that his asthma met Listing 103.03.[11] In support of this argument, Plaintiff cites the opinions of two treating physicians. (Pltf's App. Brf. at 10-11).

First, to establish that he met the criteria for Listing 103.03, Plaintiff cites the checklist assessments completed by Drs. Albert Ziegler and Larry Simmons.[12] (Tr. 348, 369). (Pltf's Brf. at

---

[11] 103.03 Asthma. With:

A. FEV-1[forced expiratory volume] equal to or less than the value specified in table I of 103.02A;

Or

B. Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks;

Or

C. Persistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators with one of the following:
    1. Persistent prolonged expiration with radiographic or other appropriate imaging techniques evidence of pulmonary hyperinflation or peribronchial disease; or
    2. Short courses of corticosteroids that average more than 5 days per month for at least 3 months during a 12-month period;

Or

D. Growth impairment as described under the criteria in 100.00.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2007).

[12] In the checklists, Drs. Ziegeler and Simmons checked boxes for "medical impairments" with preprinted language tracking the language of the B and C criteria. (Tr. 348, 369).

10-11). These two checklist assessments are entitled to little weight, and are notably similar to residual functional capacity checklists. While residual functional capacity checklists are entitled to be considered by the ALJ, they are accorded little weight in evaluating whether a claimant is disabled. *See Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (ALJ properly discounted treating physician's checklist forms that cited no medical evidence).

More importantly, Plaintiff points to no medical evidence in support of the checklist forms. Many of the entries on these forms are simply not supported by the medical record and Plaintiff's symptoms as noted in treatment records. Accordingly, these forms cannot be reconciled with the medical record. *Weise v. Astrue*, 552 F.3d 728, 732 (8th Cir. 2009).

Ironically, Dr. Simmons indicated in another portion of his checklist assessment that Plaintiff had no more than moderate limitation in any domain of functioning, (Tr. 371-73). Similarly, Dr. Ziegler checked "none to slight" (the lowest possible choice) in rating Plaintiff's level of impairment in each of the six domains.[13]  (Tr. 350-52). Thus, in parts of both of those checklist assessments, Drs. Simmons and Ziegler indicate that Plaintiff is *not* disabled.

The determination of whether a claimant meets or equals a Listing is an issue reserved for the Commissioner. S.S.R. 96-5p at 3. Plaintiff had the burden of showing that he met a Listing. *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006); *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004); *Pyland v. Apfel*, 149 F.3d 873, 877 (8th Cir. 1998). The Court concludes that he failed to meet that burden.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *E.g., Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996); *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992). The Court has reviewed the entire record,

---

[13]Dr. Ziegler noted that Plaintiff would possibly have "very little problem" with his asthma if he took his medications and kept his appointments. (Tr. 352). He also stated that Plaintiff "almost never" kept appointments. (Tr. 347).

including the briefs, the ALJ's decision, and the transcript of the hearing. The Court concludes that the record as a whole contains ample evidence that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. at 401; *see also, Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). The Court further concludes that the ALJ's decision is not based on legal error.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is hereby affirmed and Plaintiff's Complaint is hereby dismissed, with prejudice.

DATED this 24th day of May, 2010.

_____
UNITED STATES MAGISTRATE JUDGE